The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Craig H.D. Armond presiding. Good afternoon, counsel. Thank you for making the accommodations that you did, Miss Levy. We appreciate it. Mr. Bansion, it's nice to see you. Thank you, your honor. I apologize for the mistake. I sat down at 10 o'clock with a bad headache and the next thing I knew it was one o'clock. Ralph, I hope you're feeling better now, Mr. Bansion. I am. I apologize to the court and the counsel. That's fine. Thank you. We'll next call 4-22-0383, People of the State of Illinois v. Dwayne Hollins. Could counsel for the appellant please state your name for the record? My name is Rebecca Levy. I'm from the Office of the Safe House Defender and I represent Dwayne Hollins. Thank you, Miss Levy. Counsel for the appellee, could you please state your name for the record? David Bansion with the Appellate Prosecutor's Office. Thank you. Miss Levy, you may proceed. Good afternoon, your honors and counsel. This court should again remand this case to the circuit court because the trial court improperly sentenced Dwayne Hollins to 12 years in prison for delivering less than a gram of heroin within 1,000 feet of a school. And this time, this sentence is problematic on two different bases. First, the court below denied Hollins his right to due process when it did not inform him that he could elect to be sentenced under either the law that was in effect at the time the delivery in this case was committed or the law that was in effect at the time he was convicted, tried, and sentenced. Shortly after the delivery in this case occurred in the end of October of 2017, and shortly after that, the General Assembly amended that particular statute. And the effect of it was to reduce the distance one would have to be moved within from certain protected places like schools, and in this case it was a school, but church or other public venues where there are families and children. So as of January 1, 2018, in order for Hollins to be convicted of delivering heroin within a certain amount of feet of a school, the seat would have to prove that he was within 500 feet of it. So you would acknowledge that that's a necessary element of the offense? It's an element that he has to prove, absolutely. I mean, yes. Okay. I think that there's a difference though. I mean, just something's an element of an offense. I mean, it's either an essential element or that it's, that it makes the amendment to the statute prospective only. And even in Jackson... How can it be both? It's an element of the offense. Isn't it a substantive change? Not necessarily. There are various elements that appear as just sentencing only. But this isn't one that appears just sentencing. Let me finish my question, please. You've already acknowledged that this is a necessary element of and they have to prove it. It doesn't kick in just at sentencing, correct? It doesn't kick in only at sentencing, but the act of delivery itself is still there regardless of whether it's within a certain amount of distance. Well, actually in this case, it wasn't because count two was dismissed. You didn't object to that. Well, not you, but trial counsel didn't object to it, nor did they ask for a lesser included offense when the case went to trial, did they? Um, as far as I'm aware, they did not, but... Okay, so you didn't want the delivery. This is an all or nothing shot on the 407B violation. As far, I mean, I don't know the conversations that, um, I'm not... I'm looking at the record. Yes, I do. I don't know who the counsel and the defendant discussed not on the record, correct, but yes, as far as the record shows, uh, they did not ask for a lesser. Okay, go ahead. I'm sorry. The underlying act of delivery though, Collins is now asking for that, um, because the statute was amended, um, of the statute that he was convicted of, 407 was amended, um, and he was not within 500 feet of the school. He was, um, within a thousand feet of it, but, uh, because his case was pending in the circuit court, um, pretty much the whole time, uh, after it had been amended, he wasn't even arrested until May. So this case, the amendment was already in effect when he was arrested, when he was tried, when he was convicted, when he was sentenced the first time and the second, um, and because it increased, the amendment actually decreased the, his liability or his, um, potential for a longer sentence because of the delivery being near a school, um, the statute, he was entitled to be, um, first informed that he had the right to elect, um, to be sentenced under either of the statutes, um, and then he could have made that election, but that didn't happen in this case. Um, okay, this case, I, I do think it is more similar to a sentencing issue than, um, the state or your honors have stated, uh, in Jackson, uh, the Illinois Supreme Court stated that, uh, the value, uh, an amendment to the, to the limits of the value of, um, of an item stolen in fact, um, didn't affect the substance elements of theft. And here, the delivery is still a delivery, just like whether it happened, uh, within 500 or a thousand feet of a particular location, he, Collins is still guilty of the underlying delivery. And the, the section, uh, 407 of the, um, Controlled Substances Act is basically an enhancement to the underlying, the section 401, which is the delivery statute, just on its own, just, um, without an increased, uh, class of felony or a length of sentence when it's a, just an underlying, just outright delivery without, uh, regard for the location or to whom the delivery occurred. Um, the state absolutely, of course, was required to prove, um, that he, if it wasn't going to convict him under the, uh, prior statute that had not been amended, would have had to prove, and did the delivery occurred within a thousand feet of the school, but he, sorry, Collins had the, I mean, that, that, that, that is part of the, the offense, but the actual offense itself is the delivery, just like the actual offense in, um, Jackson was the theft. The value of it doesn't change the fact that the theft occurred, the value that, uh, taken. Um, and then the state says that this case, um, somehow, uh, runs afoul of, um, Apprendi, and I don't, I don't think Apprendi even applies here at all. Um, Apprendi, in this, in this situation that, um, amendment to the statute lessened or mitigated the punishment, um, and Apprendi dealt with when, um, a punishment was increased. Um, here, Collins is requesting that the amendment be applied to him, um, and the language of, uh, section four of the sentiment and statutes expressly says that, um, changes to laws that punishment or sentence, um, can be applied, uh, to any judgment that, uh, is pronounced after the new law has gone into effect, um, if the party who it affects, uh, consents to that. And here, Collins asked for that to happen, but he was never told that that was an available option for him. Um, and because he was never informed of that, he did not waive, uh, or forfeit this matter. So, Collins is asking this court to, um, vacate his conviction, I mean, vacate his class two felony for the sentencing range of, um, three to seven years, instead of the class one that he has now, oh, he has 12 years, but the, the range is four to 15. Um, but this court could also vacate his sentence and reduce it itself, um, on appeal to save judicial resources and time, um, and we would ask that this court do that, um, and sentence him to seven years, uh, for, if this court agrees with the argument that he was denied his right to due process by not being told he had the right to elect under which, uh, statute he wanted to be sentenced. Um, the court, the sentence is also problematic in that the court relied on factors, um, that it shouldn't have. Um, the court abused its discretion in implying it, in, um, resentencing Collins to 12 years in prison again. Um, where it remanded for resentencing and how it was not arguing that, uh, the, he's required to be sentenced to a lesser sentence, but here the court, it seemed to the, the, it's languaging more that it was trying to, um, defend the sentence as not being excessive. Um, and in particular, the court stated that he didn't find the sentence excessive, which wasn't the issue before the court. It was that he was supposed to be sentenced not as a mandatory class X offender. And he had, um, one last felony conviction. Um, the court also, it also erred in, um, focusing on the harm that Collins had caused to society. And it reiterated that he had, um, the state argued in the court reiterated that he had a pattern, um, uh, delivery, drug delivery. And as I noted in the, in our briefs, he, this is his only conviction ever, um, for a delivery offense. So, excuse me, if I may interrupt, wasn't there testimony from, I think it was Tanika Harvey that she and the defendant had sold drugs together and described a pattern of driving to Chicago and buying heroin and cocaine, and then returning to Lincoln to sell drugs, then out of the home? She, she testified that they had driven there twice in October. Um, I don't, uh, specifically recall if she had other occasions that she's mentioned that they've driven there. Um, her version of events, obviously, um, is somewhat suspect or incredible or is subject to, um, some credibility is sort of a question in that she also committed the same offense and pled guilty to it and testified against it. She seemingly has a longer or more involved, uh, reason what is in the record, at least, uh, relationship with heroin and selling it. Um, the court credited her testimony that she sold the heroin for the most part and that, um, Collins wanted to stay away from it. Um, and, and, and the offensive delivery is, uh, punished more significantly or it's a higher class felony than just possession because there is harm involved, but that's not another reason to add more or to aggravate it. It's not an aggravating factor in the sense, unless the harm is so out of the ordinary or very apparent, it's not a regular drug case. In this case, there's no harm at all. Um, police created this whole situation by sending an informant to buy the heroin. Um, he wasn't expecting her. He didn't answer the door when, um, she first knocked, um, she didn't solicit her. She came to him, uh, and the police immediately, immediately recovered, um, what she bought from him, um, which was less than a gram of heroin. Um, but there was no time or, uh, ability for anyone to, to use the heroin, uh, where the state set up the whole, um, ordeal or the whole situation. Um, and then again, also, um, although he didn't object in the, uh, court below, the reference to the tickets he received at IDOC, um, or he allegedly received, they weren't presented to the court and no one testified about them. Um, he, the range of dates that those eight, maybe, events possibly could have happened is over a 20 year period. And that's a very long time. And it was not, it was only nine months of that time period was, um, after he was originally sentenced in the Main Street case. Um, those eight events could have happened in 2000, which is when, um, I believe that the, uh, PSI said, um, it was, it was from 2000 until I believe 2019. Um, and him having, possibly having eight tickets over that long of a time period, uh, doesn't really indicate that he has a difficult time, um, to present like the court asserted when it sentenced him. If there are no other questions, we're asking the court to, um, reduce Mr. Hollins' conviction to a class two felony and his sentence to seven years. Thank you, counsel. Mr. Manchin. May it please the court, in this case, the sentence at the time of the offense and the sentence at the time of trial, the change from 1000 feet to 500 feet from this was a substantive change. And under the statute of statutes, you cannot, uh, apply a substantive change, uh, to a, to a prior offense. Since this, uh, since distance is an element to the offense, any change in that element is necessarily a substantive change that cannot be applied retroactively. Uh, the Jackson case that defendant relies on is highly suspect. First, it proceeds on the theory that because value of the property was not an element of the offense, it, the change in it therefore could be applied, uh, retroactively. However, since Jackson was decided, the legislature has declared that value is in fact an element of the offense, uh, undercutting the premises of Jackson. And any fact that increases a defendant's punishment for a crime other than a prior offense has to be proved beyond a reasonable doubt. And in another Jackson decision in from 2002, that's one 99 Illinois second to 86. The only Supreme court said the underlying lesson of apprendee is facts that otherwise legally prescribed are by definition elements of a separate legal offense. The underlying felony here, as counsel says, is the delivery. The sentence is changed by the fact that the delivery takes place within a certain distance of a prohibited place. Under apprendee and the plain language that an element that you have that a change in the element is substantive. The jet, the, uh, uh, Jackson case decided by the defendant is no longer good bet. Uh, law should be, should not be followed because the, uh, even if the change in distance really only affects the potential sentencing range, it is nevertheless a substantive change in the offense that the distance had to be proved as an essential element of the separate offense under apprendee to apply Jackson, uh, who says that value is not an element when the, when the legislature says it now is an element, uh, just simply should not be followed. The, uh, statute of statute simply does not apply to substantive changes like this with regards to the excessive sentencing issue regarding the consideration of the tickets and the consideration of the harm, the, uh, Casillas and easily the Illinois Supreme Court expressly held that information in regarding a defendant's prison record contained in a pre-sentence report can be considered at sentencing under the, those holdings, the trial committed no error in considering this finished, uh, prison record. Counsel, excuse me. It appears to me though, in the sentencing that the trial court seemed to suggest that these were new incidents. And it appears that in looking at the PSI, it is almost a 20 year period. And it does not appear to me that it was clear in the record specifically when those alleged violations had occurred. The problem comes in that in the initial, uh, pre-sentence report that was filed before remand, the pre-sentence report did not contain the information regarding the, uh, prison record in the amended, uh, pre-sentence report. Uh, they, they were included. So in that respect, they were new information before the court. Uh, the age of them only goes to the weight. Obviously, if there was clear evidence that between the two sentencing dates, the defendant was involved in 15 fights in the jail, that would be given more weight than the fact that over the course of 20 years, he's had, uh, a certain number of, uh, uh, infractions of prison rules. So it it's not that there was error to consider. It's just how much weight does the court give it? And I don't believe that given the court's primary focus on the defense, uh, prior record and the commission of this, uh, offense, uh, while on, uh, I believe it was parole that the, the weight given it would not require reversal with regards to the harm, uh, in delivery of, uh, uh, heroin, the, uh, rule that says you cannot consider, uh, elements of the defense because the legislature has expressly stated that the harm from delivery of heroin may be considered so that there's no error there. And this it's the harm here was beyond that inherent defense because of the defendant's of, uh, drug dealing. Uh, the, uh, testimony was that there was multiple trips to Chicago, procured drugs to, uh, uh, sell drugs. So it's not, that is not inherent in this particularly big delivery so that the court's consideration of harm by dealing was not error. I'm trying to remember the, uh, defendant's prior record. Uh, again, the defendant seems to be suggesting that because the, uh, prior gun conviction is not being considered, the trial court is required to impose a lesser sentence. And there is no requirement that a uh, trial court here expressly relied upon the, uh, defendant's, uh, prior convictions for drug offenses and multiple, uh, violations of pro probation and the violation of parole to find that the imposition of the, uh, original sentence was appropriate. And I submit that the trial court did not have used this discretion in its, uh, sentencing upon remand. Uh, if there are no further questions for the court, I will stand on my brief. All right. Thank you, counsel. Just leave your rebuttal. You're back on mute. I'm sorry. Okay. I'm good. Okay. Um, regarding the harm that might have potentially been caused in this case, the key, the state cites, um, in its own brief, McCain, the people versus McCain, um, which explicitly states that if a trial court intends to consider the societal harm that the defendant's conduct caused or threatened to cause as an aggravating factor, um, the trial record or the sentencing record much, much, uh, has to demonstrate that the defendant's kind of had a greater propensity to cause harm than, um, that which otherwise would be caused by the act of delivery. Um, and that it's more, there's more harm involved than, um, the degree of harm inherent in the act itself. Um, and there's no demonstration of that here at all. Um, and regarding the, um, IDAC, the court's reliance on the IDAC tickets, um, a counsel said it goes to weight, but the court gave it weight, significant weight because it mentioned it, um, explicitly mentioned his IDAC, uh, during when, when, when it imposed sentence. Um, and it didn't have that information before if the information was even accurate. So the court did consider it, um, and considered it as aggravation, um, in reimposing the same 12-year sentence. Um, he had one last felony conviction. The seat really didn't present anything new in aggravation at all. Um, the sentencing range had been six to 30, and his sentence was kind of in the middle, a little less than half of the maximum. And now it's just two years, um, less than the maximum, but before his sentence was, the court believed that it should be less than half of what the very top of it. Um, there's just, I mean, one or two of these, of these small errors maybe would not have shown that the court abused his discretion, but here it's just, it's three separate things that the judge either relied on or didn't, didn't rely on in imposing sentence. This is the second hearing. Um, the court, like I mentioned earlier, um, that it was, um, reimposing the sentence because it didn't believe that it had been excessive the first time, which as I mentioned was not at issue before the court at all, whether, um, before the trial court, uh, he was supposed to be re-sentenced for a lower class felony. Um, the court's or the legislature's, uh, declaration that the value of the item is an element of theft, um, it always was. The state, the defendant has the right at sentencing or at trial, wherever it's going to occur to, um, make the state prove its burden or live up to its burden. And if an item costs, if the state wants it, if this, if the state is trying to, um, convict and sentence the defendant, I, I'm not, I'm not familiar with what the current, um, values are for which class felony for theft, but I believe in, um, Jackson, it was, I think it was Sarandon, so the court would, the defendant would have, has the right to force the that the item, um, exceeded $300 or whatever amount it, whatever the amount is set at. Um, and it's really no different than the distance here. Uh, the delivery is still the same, just like the act of theft is still the same. And if you have any other questions, it will stand on my race. All right. Thank you. Counsel. The court will take this matter under advisement. The court stands in recess.